IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00054-WJM-01

UNITED STATES OF AMERICA,

    Plaintiff,

v.

4.    MARCELLE GREEN,

    Defendant.

## PLEA AGREEMENT

The United States of America, by and through Robert C. Troyer, Acting United States Attorney for the District of Colorado, and Martha A. Paluch and Bryan D. Fields, Assistant United States Attorneys, and the defendant, Marcelle Green, personally and by counsel, Jeralyn E. Merritt, Esq., hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.    PLEA AGREEMENT

#### A. Defendant's Obligations

The defendant agrees to plead guilty to Count 1 of the Superseding Indictment, charging a violation of 18 U.S.C. § 286, Conspiracy to Defraud the Government with Respect to Claims. The defendant agrees to the appellate waiver, set forth fully below. The defendant agrees to pay restitution payable to the United States Department of Education and to a number of community colleges, the names and amounts of which will be specified by the government prior to sentencing, which amount will not exceed

Court Exhibit 1

$562,487.85. The defendant agrees to provide complete and truthful information pursuant to the terms set forth more fully below.

### B. The Government's Obligations

In exchange for the defendant's plea of guilty and waiver of certain appellate rights, the United States Attorney's Office for the District of Colorado ("the government") agrees to move at sentencing for dismissal of Count 8 in the Superseding Indictment, the only remaining count in which this defendant is charged. The government also agrees to not file any additional charges in the District of Colorado against the defendant based on the information presently known to the government as outlined in the statement of facts below. In addition, provided the defendant does nothing inconsistent with accepting responsibility between the date of the plea hearing and the date of sentencing, the government will recommend that the defendant receive the maximum reduction for acceptance of responsibility. The government is not bound to seek any particular sentence. The government's agreement with respect to cooperation is set forth below.

### C. The Defendant's Waiver of Appellate Rights

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2)

the sentence exceeds the advisory guideline range that applies to a total offense level of 23; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

### D.   *The Defendant's Cooperation Agreement*

The defendant agrees to provide truthful, complete and accurate information, and agrees to cooperate fully with the government. Deliberate falsehoods or misinformation provided during her cooperation with the government would be grounds for rescission of this plea agreement as well as possible further prosecution for perjury or false statements. This cooperation will include, but is not limited to, the following:

    a.   The defendant agrees to be fully debriefed, and to attend all meetings at which her presence is requested, concerning her participation in, and knowledge of, all criminal activities.

b.  The defendant agrees to furnish to the government all documents and other material that may be relevant to the investigation into fraud upon the federal government and that are in the defendant's possession or control.

c.  The defendant agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government. This extends to providing testimony about all information the defendant knows, not merely about the facts outlined in the statement of facts below.

d.  The defendant agrees she will at all times give complete, truthful and accurate information and testimony and will fully and truthfully disclose all information with respect to the activities of herself and others concerning all matters about which the government inquires.

e.  The defendant consents to postponements of her sentencing, as requested by the government and as approved by the Court. Should the defendant be required to provide testimony at a time subsequent to her sentencing in this case and should the defendant fail, at a later date, to comply with the obligation to testify, the government could seek to re-charge her on any and all counts which were dismissed as part of this Plea Agreement or which the government agreed not to pursue based on this Plea Agreement.

f.  It is understood that the government's determination of whether the defendant has cooperated fully and provided substantial assistance, and the government's assessment of the value, truthfulness, completeness and accuracy of the cooperation, are within the government's sole discretion. Moreover, the defendant shall

-4-

not be entitled to withdraw her plea if the government determines that she has not fully cooperated.

The defendant's full cooperation, including truthful testimony - if required, has not yet been completed.  However, in light of defendant's substantial assistance to date, the United States Attorney anticipates that, pursuant to U.S.S.G. § 5K1.1, it will file a timely motion for downward departure at the time of sentencing.  The Court has the sole discretion to grant such a motion.  The nature and extent of the defendant's cooperation, as well as the final requested departure, will be set forth in the government's § 5K1.1 motion.  The parties understand and agree that the determination of whether or not the defendant has fully cooperated in compliance with the terms of this plea agreement is entirely within the discretion of the government.  The United States agrees to consider the totality of the circumstances, including but not limited to, the following factors, in determining whether, in the sole discretion of the United States Attorney, the defendant has provided substantial assistance which would merit a motion by the United States for a downward departure from the applicable Guideline:

    a.    The United States' evaluation of the significance and usefulness of the defendant's assistance;

    b.    The truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

    c.    The nature and extent of the defendant's assistance;

    d.    Any harm or risk of harm to the defendant or the defendant's family resulting from the defendant's assistance; and

      e. The timeliness of the Defendant's assistance.

The parties recognize that any sentence requested by the government will be a recommendation to the Court and that the defendant's ultimate sentence will rest solely within the discretion of the sentencing Court.

The defendant also acknowledges that she will not be able to withdraw her guilty plea in the event that the Court elects not to grant any downward departure pursuant to the request made by the government or rejects the amount of the departure requested by the government.

The defendant may not contest the government's ultimate determination as to whether a § 5K1.1 motion is appropriate in this case. The government has not promised a reduction or the amount of any reduction. Again, the defendant understands she will not receive any reduction if she refuses to provide complete and true information to the government and to testify truthfully in any proceeding.

## II. ELEMENTS OF THE OFFENSE

In order to be convicted of a violation of 18 U.S.C. § 286, Conspiracy to Defraud the Government with Respect to Claims, the government would have to prove the following elements beyond a reasonable doubt:

First, the defendant agreed with at least one other person to obtain or aid in obtaining the payment or allowance of any false, fictitious, or fraudulent claim;

Second, the defendant knew the essential objective of the conspiracy;

Third, the defendant knowingly and voluntarily participated; and

Fourth, there was interdependence among the members of the conspiracy; that is,

the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

*Tenth Circuit Pattern Jury Instructions (Criminal Cases)*, § 2.19 (2011 ed.) (modified for § 286 and to remove overt act requirement); *United States v. Dedman*, 527 F.3d 577, 594 n.7 (6th Cir. 2008) (holding that § 286 has no overt act requirement); *United States v. Lanier*, 920 F.2d 887, 892 (11th Cir. 1991) (same).

## I.  **STATUTORY PENALTIES**

The maximum statutory penalty for a conviction of 18 U.S.C. § 286, is as follows: Not more than 10 years of imprisonment; a fine of not more than $250,000.00, or both; not more than 3 years of supervised release; and a $100.00 special assessment fee. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## II.  **COLLATERAL CONSEQUENCES**

The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

## III.  **STIPULATION OF FACTS**

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in August 2010. The parties agree and stipulate to the following facts. Beginning in approximately August 2010, and continuing until approximately October 2012, in the State and District of Colorado and elsewhere, the defendant and her coconspirators, Heather Carr, Trammel Thomas, and Mercedes Diaz, knowingly agreed and conspired with each other to defraud the Department of Education (the Department) by submitting false claims for federal student aid to the Department and in fact did receive payment on certain of these false claims from the Department and shared in the proceeds. The Department is an agency of the United States government responsible for overseeing the administration of federal student assistance programs, including financial aid programs designed to assist qualified students with paying for college.

The defendant, with the assistance of her coconspirators, obtained names, birth dates, and social security numbers of more than 150 inmates and used this information to apply for federal student assistance funds in the names of the inmates (purported applicants or students). The applications, known as the Free Application for Federal Student Aid ("FASFA"), contained materially false representations about the identity of the person submitting the application and the purported applicant's intent to attend educational institutions. These false representations supported improper

determinations by the Department that the purported applicants were eligible to receive federal student assistance funds when they were not.  The defendant and her coconspirators used the funds disbursed by the Department for their own financial benefit.

The defendant received mail in the names of the purported students at two addresses under her control.  She submitted FASFAs in purported students' names to the Department.  The defendant and her coconspirators routinely submitted applications for admission to Pikes Peak Community College, along with other community colleges in Colorado and some in Arizona.

The defendant's coconspirators recruited people to receive mail in the names of purported students at their homes so the coconspirators could receive mail in the names of purported students at those addresses.  Many of the mailing addresses used were in Colorado Springs, Colorado, and others were in Phoenix, Arizona.  The mail included correspondence about the college application and financial aid process.  Most significantly, the mail included debit cards loaded with financial aid for the purported student.

In order to receive the financial aid, it was necessary for the coconspirators to enroll in and complete homework assignments online for the particular community college at issue.  The defendant and her coconspirators completed these assignments and submitted them to the respective community college.

Once debit cards arrived at the addresses under the defendant's control, she withdrew cash from these debit cards at ATMs, and paid for utilities and other living

expenses with the debit cards. Defendant maintains that during the course of this conspiracy, she kept approximately 70 percent of the money from the 11 debit cards mailed to addresses under her control and gave the remaining 30 percent of those funds to Heather Carr. As to the cards obtained by Heather Carr that the defendant withdrew money from, the defendant maintains she received approximately 40 percent of the money from those cards and gave the remaining 60 percent to Heather Carr.

During the course of the conspiracy, the defendant and her coconspirators were involved in submitting more than 150 false FASFAs to the Department seeking approximately $1.3 million in federal financial aid funds. The Department disbursed $562,487.85 as a result of the defendant's and her coconspirators' false claims. Of this amount, the defendant and her coconspirators received $418,672.05 in refunds deposited in the accounts of purported students and on debit cards. The defendant and her coconspirators shared in these proceeds.

### IV.   SENTENCING COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

A.   The base offense level is 6 pursuant to § 2B1.1(a)(2).

B.     A 14-level increase applies pursuant to § 2B1.1(b)(1)(H) because the loss was more than $550,000 but less than $1,500,000.

C.     A 2-level increase applies based on the use of a means of identification (the personal identifying information and social security numbers) to obtain another means of identification (the student ID numbers and debit cards).  *See* § 2B1.1(b)(11)(C)(i)-(ii).

D.     A 4-level increase applies because the fraud scheme involved a large number of inmates, who are vulnerable victims.  *See* § 3A1.1(b)(1) and (2) and *United States v. Pierre*, 825 F.3d 1183 (11th Cir. 2016).[1]

E.     The parties disagree over the whether the defendant should receive a decrease in her offense level pursuant to § 3B1.2 for a mitigating role.  The defendant believes that a two-level adjustment is warranted under this section of the guidelines; the government maintains that no adjustment is warranted.

F.     The adjusted offense level would be between 26, if no mitigating role departure is applied, and 24, if a mitigating role adjustment of 2 is applied pursuant to § 3B1.2.

G.     Pursuant to §3E1.1(a) and (b), provided the defendant does nothing inconsistent with accepting responsibility between the date of the plea hearing and the date of

---

[1] In coconspirator Mercedes Diaz's presentence report, the probation department included a two-level increase in the base offense level due to the fact the offense involved more than 10 victims.  See ECF 96 at 9, ¶ 38.  The government did not seek this increase in Diaz or Carr's plea agreements, ECF 81 at 7-8 and ECF 94 at 12-13, and therefore does not include it here.

sentencing, the defendant should receive the full three-level reduction for acceptance of responsibility. The resulting total offense level would be between 23 and 21, depending on whether the mitigating role adjustment is found to apply.

H. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is ultimately determined by the Court. The information known to the parties shows that the defendant has prior criminal history. The defendant's criminal history category is tentatively estimated to be Category III.

I. Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

J. The guideline range resulting from the government's estimated total offense level of 23, and the tentative Criminal History Category III, is 57-71 months. The guideline range resulting from the defendant's estimated offense level of 21, including the disputed mitigating role reduction, and the tentative Criminal History Category III is 46-57 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 37 months (bottom of Category I at level 21) to 115 months (top of Category VI, at level 23).

K. Pursuant to guideline § 5E1.2, assuming the estimated offense levels above, the fine range for this offense could conceivably result in a range from $15,000

(minimum fine at level 21) to $200,000 (maximum fine at level 23), plus applicable interest and penalties.

L. Pursuant to § 5D1.2(a)(2), if the court imposes a term of supervised release, that term shall be at least one but not more than three years.

M. The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

N. The defendant agrees to pay restitution to the United States Department of Education and to a number of community colleges, the names and amounts of which will be specified by the government prior to sentencing, but which amount will not exceed $562,487.85.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

## V. **ENTIRE AGREEMENT**

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 10-17-17    _____
                  Marcelle Green
                  Defendant

Date: 10-17-17    _____
                  Jeralyn E. Merritt
                  Attorney for Defendant

Date: 10/17/17    _____
                  Martha A. Paluch
                  Assistant U.S. Attorney

Date: 10/17/17    _____
                  Bryan D. Fields
                  Assistant U.S. Attorney